UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID P. FABER,

               Plaintiff,

v.

BANK OF NEW YORK TRUST
COMPANY, NA, *et al.*,

               Defendants.

_____/

Case No. 1:12-cv-537

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* diversity action for claims arising from an allegedly invalid mortgage. This matter is now before the court on defendant Terry L. Hibbens' motion to dismiss (docket no. 12).

### I.      Plaintiff's Claims

Plaintiff David P. Faber has named three defendants in this action. Defendant Bank of New York Trust Company, N.A. ("Bank of NY") is a subsidiary of Bank of New York Mellon Corporation, a banking corporation organized and existing under the laws of the state of Delaware. Compl. at ¶ 2. Defendant Mortgage Electronic Registration Systems Incorporated, also known as MERSCORP HOLDINGS INC. ("MERS"), is a mortgage servicing and recordation company organized under the laws of Delaware. *Id.* at ¶ 3. Defendant Terry L. Hibbens is an Illinois resident and who at all times relevant to this lawsuit was a notary public in the state of Illinois.[1]

_____

[1] Plaintiff refers to defendant Hibbens as "Terri L. Hibben."

Plaintiff has set forth the following allegations in his complaint. Plaintiff is a resident of Berrien County, Michigan, and owner of real property located at 9448 California Lane, Union Pier, Michigan (the "Michigan property"). *Id.* at ¶ 1. He was married to Barbara A. Gorder ("Gorder") in January, 1993. *Id.* at ¶ 6. Plaintiff and Gorder purchased the property in 2001. In plaintiff's words, "[t]itle was jointly held with full rights of survivorship." *Id.* In December 2005, without plaintiff's knowledge or consent, Gorder "applied for a home equity line of credit mortgage" through Countrywide Home Loans, Inc. *Id.* at ¶ 7. Gorder listed plaintiff as a co-applicant on the mortgage application. *Id.*

In March 2006, the application was approved for a maximum credit line of $300,000.00. *Id.* at ¶ 8; Home Equity Confirmation Agreement (docket no. 1-2 at pp. 30-31). Then, on April 18, 2006, Gorder executed a note and mortgage pledging the property as collateral, and signing plaintiff's name to both of those documents under a "Specific Power of Attorney" (sometimes referred to as the "POA") dated April 14, 2006. *Id.* at ¶¶ 9-10; Specific Power of Attorney (docket no. 1-2 at pp. 33-36). Plaintiff stated that he never signed the POA and that his signature on the document is a forgery. *Id.* at ¶ 10. Plaintiff's forged signature on the POA was notarized by defendant Hibbens in her capacity as an Illinois Notary Public. *Id.* at ¶ 14. Both the POA and the mortgage were recorded in Berrien County. *Id.* at ¶¶ 10-11. The note corresponds to a debt which is currently serviced by Bank of America NA in Simi Canyon, California. *Id.* at ¶ 12. Defendant Bank of NY "holds an interest and or claims to be the creditor" of the note. *Id.* Plaintiff believes that the present balance outstanding on the note is approximately $250,000.00. *Id.* at ¶ 13.

In April 2008, during divorce proceedings involving plaintiff and Gorder, plaintiff became aware that Gorder had mortgaged the property in 2008 without his knowledge or consent

and that Gorder used the funds to cover extensive losses in her business.  *Id.* at ¶ 15.  Plaintiff and

Gorder were divorced on August 18, 2009.  *Id.* at ¶ 16.  As part of the divorce settlement, Gorder

assumed full responsibility for the note and agreed to make all of the payments.  *Id.*

On or about April 13, 2012, plaintiff filed this action in the Berrien County Circuit

Court.  *See* Notice of Removal (docket no. 1).  Plaintiff's complaint alleged three counts.  In Count

I, plaintiff seeks a declaratory judgment that the POA is a forgery, invalid and without legal effect.

*Id.* at ¶¶ 17-20.

In Count II, plaintiff claims that Hibbens breached the Illinois Notary Public Act, 5

ILCS 312,  § 6-102 with respect to the POA.  *Id.* at ¶¶ 21-25.  The version of this statute in effect

in 2006 provided as follows:

§ 6-102. Notarial Acts.

(a) In taking an acknowledgment, the notary public must determine, either from
personal knowledge or from satisfactory evidence, that the person appearing before
the notary and making the acknowledgment is the person whose true signature is on
the instrument.

(b) In taking a verification upon oath or affirmation, the notary public must
determine, either from personal knowledge or from satisfactory evidence, that the
person appearing before the notary and making the verification is the person whose
true signature is on the statement verified.

(c) In witnessing or attesting a signature, the notary public must determine, either
from personal knowledge or from satisfactory evidence, that the signature is that of
the person appearing before the notary and named therein.

(d) A notary public has satisfactory evidence that a person is the person whose true
signature is on a document if that person:

(1) is personally known to the notary;

(2) is identified upon the oath or affirmation of a credible witness
personally known to the notary; or

(3) is identified on the basis of identification documents.

5 ILCS  § 312/6-102 (2006).  Plaintiff also alleged that Hibbens is liable to him pursuant to 5 ILCS

312,  § 7-101.  *Id.* at ¶¶ 21-25.   The version of this statute in effect in 2006 provided as follows:

> § 7-101.  Liability of Notary and Surety.
>
> A notary public and the surety on the notary's bond are liable to the persons involved
> for all damages caused by the notary's official misconduct.

5 ILCS  § 312/7-101 (2006).

In Count III, plaintiff claims that Hibbens was negligent in her duty to properly

notarize his signature and breached her duty under the Illinois Notary Public Act, 5 ILCS  § 312/

1-101 *et seq.* with respect to the POA.  *Id.* at ¶¶ 26-30.  Plaintiff seeks declaratory relief, damages

and attorney fees.

On May 24, 2012, defendants Bank of NY and MERS, with the consent of defendant

Hibbens, filed a notice of removal of this action to the Western District on the ground of diversity

jurisdiction, 28 U.S.C.  § 1332, because the action involves citizens of different states.  *See* Notice

of Removal (docket no. 1).

## II.    Defendant Hibbens' motion to dismiss

### A.    Legal standard

As an initial matter, defendant Hibbens' motion does not address the applicable legal

standard under the Federal Rules of Civil Procedure.   Rather than require additional briefing on this

matter, the court will view defendant's motion as brought pursuant to Fed. R. Civ. P. 12(b)(2) which

provides that "a party may assert the following defenses by motion:  .  .  .  (2) lack of personal

jurisdiction."  "In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing

the existence of jurisdiction."  *Air Products and Controls, Inc. v. Safetech International, Inc.*, 503

4

F.3d 544, 549 (6th Cir. 2007), citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989).   Where the district court relies solely on written submissions to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *American Greetings Corporation v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988), and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991).   *Air Products and Controls*, 503 F.3d at 549.   The pleadings and affidavits (if any) submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh the controverting assertions of the party seeking dismissal. *Id.* (internal quotation marks omitted).

### B.    Personal jurisdiction in a diversity action

The issue before the court is whether defendant Hibbens is subject to the court's jurisdiction in this action.   In analyzing personal jurisdiction in diversity actions, "federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements."   *Id.* at 550.   This involves a two-step process:  "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process."   *Id.*  The relevant inquiry for the court is whether the facts of the case demonstrate that the nonresident defendant possesses such "minimum contacts" with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).   The defendant's connection with the forum state must

5

be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 297 (1980).

### 1.    Michigan's long-arm statute

Michigan's long-arm statute providing for limited personal jurisdiction, M.C.L. § 600.705, states as follows:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
>
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
>
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
>
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

M.C.L. § 600.705.

6

Under the facts as alleged in the complaint, two sections of Michigan's long-arm statute apply to Hibbens, M.C.L. § 600.705(2) and (3).  While Hibbens did not reside in Michigan, she notarized a document entitled "Specific Power of Attorney."  This document had one purpose – it authorized Gorder to act as the attorney-in-fact for plaintiff  to engage in transactions involving a specific parcel of real estate located in Michigan.  *See* POA (docket no. 1-2).  Specifically, the POA granted Gorder authority to "[c]ontract for, purchase, receive and take possession of; to sell, exchange, grant or convey with or without warranty; to mortgage, transfer in trust, or otherwise encumber or hypothecate" the Michigan property, "and to endorse, sign, seal, execute and deliver all mortgages, Deeds of Trust, Deeds of Trust Notes, notes or bonds, financing statements, checks, drafts or other negotiable instruments and other written instrument(s) reasonably required to effectuate this loan."  *Id.*

Although Hibbens physically notarized the POA in Illinois, she participated in an alleged forgery which enabled Gorder to wrongfully encumber plaintiff's interest in the property with approximately $250,000.00 of debt, "causing an act to be done, or consequences to occur, in [Michigan] resulting in an action for tort."  M.C.L. § 600.705(2).  In this regard, the Michigan Supreme Court has held that a plain language reading of M.C.L. § 600.705(2) "reveals that either the tortious conduct or the injury must occur in Michigan."  *Green v. Wilson*, 455 Mich. 342, 352, 565 N.W.2d 813 (1997).  Here,  plaintiff met the reuirements of M.C.L. § 600.705(2) when he suffered an injury in Michigan, i.e., when Gorder used the allegedly forged POA to secure a mortgage in plaintiff's name.

In addition, while the POA itself did not convey any interest in the Michigan property, the sole purpose of the POA was to authorize Gorder to enter into contracts and legal

obligations which affected plaintiff's ownership interest in the property.  Given the special and limited nature of the POA, the court considers Hibbens' act a creating a relationship involving the "use" of the Michigan property sufficient to meet the requirements of M.C.L. § 600.705(3). Accordingly, plaintiff has met the first prong of the *Air Products and Controls* personal jurisdiction analysis.  *See Air Products and Controls*, 503 F.3d at 550.

### 2.        Due process requirements

The second prong of the personal jurisdiction analysis involves whether the exercise of personal jurisdiction under Michigan's long arm statute complies with due process requirements. The Sixth Circuit has developed a three-part test for determining whether this jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Products and Controls*, 503 F.3d at 550, quoting *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). This test is based upon existing Supreme Court jurisprudence on personal jurisdiction and provides a specific application of the broad rule requiring substantial minimum contacts as a basis for jurisdiction.  *Air Products and Controls*, 503 F.3d at 550.  In this regard, "[i]t is often repeated that the first prong – purposeful availment – is the 'sine qua non for in personam jurisdiction.'"  *Id.* quoting *Southern Machine*, 401 F.2d at 381–82.

### a.      Purposeful availment

Hibbens met the first  prong of the three part test.  The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.' " *Air Products and Controls*, 503 F.3d at 551, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475(1985).  As discussed, *supra*, the POA was designed to allow Gorder to bind plaintiff in transactions involving a particular parcel of real estate located in Michigan.   The sole purpose of the POA was to "caus[e] a consequence in the forum state." *Air Products and Controls*, 503 F.3d at 550-51. By notarizing a document that could only be used in Michigan, Hibbens was aware that her actions could have consequences in that state.   Accordingly, it is neither "random" nor "fortuitous" that Hibbens is being haled into Michigan in this action.

### b.      Defendant Hibbens' contacts with Michigan

Hibbens also met the second prong, which requires that the plaintiff's cause of action arises from the defendant's contact in the forum state.  *Id.* at 551.  In making this determination, courts look to whether the plaintiff's cause of action was  "made possible by,"  "lie[s] in the wake of," is "related to" or "connected with" the defendant's contacts with the forum state.  *Id.* (citations omitted).  This is a lenient standard, meaning "that the cause of action need not formally arise from defendant's contacts." *Id.* (internal quotation marks omitted).  Here, plaintiff's cause of action arose from Hibbens' act of notarizing a POA which was designed to deal with a specific parcel of Michigan real estate.  Gorder allegedly used the POA to affix plaintiff's name to a mortgage which encumbered that real estate.  Plaintiff would not have a cause of action involving the real estate but

for defendant Hibbens' alleged forgery on the POA.  Accordingly, under the facts alleged, plaintiff's cause of action arose from defendant Hibbens' contact with Michigan.

### c.      Personal jurisdiction is reasonable

Finally, Hibbens met the third prong, which requires that the defendant's acts have a substantial enough connection to the forum state to make exercise over the defendant reasonable. "This requirement exists because minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities."  *Id.* at 554, quoting *Burger King*, 471 U.S. at 477-78 (internal quotation marks omitted).   However, "where a defendant who has purposefully directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction reasonable." *Burger King*, 471 U.S. at 477.  Where a defendant has met the first two criterion (i.e., personal availment and contacts with the forum state), "an inference of reasonableness arises and only the unusual case will not meet the third criteria."   *Air Products and Controls, Inc.*, 503 F.3d  at 554 (internal quotation marks omitted).  Here, such an inference of reasonableness exists.  While defendant Hibbens contends that she did not anticipate being haled into Michigan due to the use of her notary Illinois license and that the Illinois courts are best equipped to interpret the Illinois notary statute, the court does not consider these to be compelling reasons to defeat this court's jurisdiction.  As discussed, defendant Hibbens should have anticipated being haled into Michigan with respect to this particular transaction. Furthermore, the fact that the court will need to interpret an Illinois statute in resolving this case is not a compelling reason to defeat jurisdiction; federal court litigation routinely involves the interpretation of statutes enacted in states other than the forum state.

### d.     Conclusion

Based on the foregoing, this court concludes that its exercise of personal jurisdiction over defendant Hibbens is authorized by Michigan law and consistent with constitutional due process.

### III.     Recommendation

For these reasons, I respectfully recommend that defendant Hibbens' motion to dismiss (docket no. 12) be **DENIED**.


Dated:  October 10, 2012                         /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).